**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

TERA M. BRUNER-McMAHON,
Administrator of the Estate of TERRY
ALBERT BRUNER, Deceased, et al.,

      Plaintiffs,

v.                                                  Case No. 10-1064-KHV-GLR

COUNTY OF SEDGWICK,
et al.,

      Defendants.

**MEMORANDUM AND ORDER**

In this civil rights action, Plaintiffs claim Defendants' deliberate indifference to Terry Bruner's serious medical needs, while he was incarcerated at the Stanton and Sedgwick County jails, caused his death secondary to bacterial meningitis. The Court has before it the Motion and Memorandum for Discovery Order (ECF No. 187), filed by the Sedgwick Defendants.[1] They request an order to authorize healthcare providers to disclose and produce for inspection, pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), medical, mental health, and psychiatric records of a non-party witness, Jay Uhrs. Plaintiffs oppose the motion. They argue that

---

[1]The Sedgwick Defendants include the following defendants: County of Sedgwick, Board of County Commissioners of Sedgwick County, Sedgwick County Sheriff Robert Hinshaw, individually and in his official capacity, Gary Steed, Wayne E. Brown, Mark B. Cook, Rhonda M. Freeman, Rachel M. Gaines, Ted Gibson, Bobby L. Hines, Eric Hunt, Joseph R. Hunter, Marque Jameson, Erica Johnson-Wootson, Janis Jones, Glenn Kurtz, Keith J. Lovingier, Timothy McMahon, Faustino Martinez, Michael Murphy, Lisa M. Perez, Gerald Pewewardy, Lisa R. Price, Daniel M. Safarik, Jared O. Schecter, Abdul S. Smith, Mary Staton, Robert D. Taylor, Henry A. Tong and Lisa Williams.

the records of the witness are protected by the physician-patient and treatment facility-patient privileges and thus not subject to disclosure. The Court denies the motion without prejudice.

In their discovery responses Plaintiffs produced a copy of a letter, purportedly from Jay Uhrs, a former inmate at the Sedgwick County Detention Facility. According to the undated letter, Mr. Uhrs may testify (1) that Terry Bruner refused food and was continuously coughing and vomiting from March 6, 2008 to March 10, 2010 and (2) that, although Mr. Uhrs informed several deputies of this, they did nothing. Counsel for Plaintiffs informally stated their intent to depose Mr. Uhrs, who is incarcerated at the Kansas Lansing Correctional Facility. By their motion the Sedgwick Defendants assert that, in order to prepare to depose and cross examine him, they need access to records that show his mental condition now and in March of 2008. To obtain copies of those records, the Sedgwick Defendants issued subpoenas for business records to two entities that have provided mental health services to Mr. Uhrs. Those entities insist on an appropriate protective order, however, in order to comply with HIPAA's federal standards for privacy of individually identifiable health information.

Plaintiffs oppose the motion. Admittedly their counsel does not represent Mr. Uhrs, but they contend it is incumbent upon their counsel, as officers of the court, to ensure that the rights and privileges accorded to unrepresented individuals are properly acknowledged and enforced. This should especially apply when the rights and privileges of unrepresented, indigent, and incarcerated persons are at stake. As a minimum measure, they contend that Mr. Uhrs' attorney should be served with a copy of the motion and have an opportunity to be heard on this matter.

Federal regulation 45 C.F.R. § 164.512(e) contains a provision that authorizes a health care provider to disclose protected health information for judicial and administrative proceedings. It

provides that a covered medical entity may disclose protected health information "in the course of any judicial proceeding" in two circumstances. Under subsection (i) a health care provider may disclose protected health information in the course of any judicial or administrative proceeding "in response to an order of a court, provided that the covered entity discloses only the protected information expressly authorized by such order."[2] Alternatively, under subsection (ii), a health care provider may disclose protected health information in the course of any judicial proceedings in response to a subpoena, discovery request, or other lawful process not accompanied by a court order, if the health care provider receives "satisfactory assurance" from the party seeking the information that either: (A) reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information requested has been given notice of the request, or (B) reasonable efforts have been made by such party to secure a "qualified protective order."[3]  A covered entity receives "satisfactory assurances" from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

> (A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);
>
> (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and
>
> (C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:
>     (1) No objections were filed; or

---

[2] 45 C.F.R. § 164.512(e)(1)(i).

[3] 45 C.F.R. § 164.512(e)(1)(ii).

>    (2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution. [4]

The regulations also define a "qualified protective order" to mean the following:

> [A]n order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
>
>    (A)   Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
>    (B)   Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.[5]

From the briefing, the Court concludes that the Sedgwick Defendants seek to proceed under subsection (i), which allows the release of protected health information upon court order even though they served subpoenas upon two healthcare providers of Mr. Uhrs and thus could proceed under subsection (ii) without a court order. Proceeding under subsection (ii), which permits the release of protected health information pursuant to a subpoena, the Sedgwick Defendants would need to comply with the requirement to provide satisfactory assurances regarding notice to the person whose healthcare information is sought, as well as making efforts to secure a qualified protective order.[6]

To justify a court order as contemplated by 45 C.F.R. § 164.512(e), the moving party must show it is entitled to the protected health information sought.[7] This first requires that the moving

---

[4] 45 C.F.R. § 164.512(e)(1)(iii).

[5] 45 C.F.R. § 164.512(e)(1)(v).

[6] 45 C.F.R. § 164.512(e)(1)(ii).

[7] *Pratt v. Petelin*, No. 09-2252-CM-GLR, 2010 WL 446474, at *3 (D. Kan. Feb. 4, 2010).

4

party show that protected health information sought is within the scope of discovery as set forth in Fed. R. Civ. P. 26(b)(1). The Sedgwick Defendants thus must show that the medical and mental health records of non-party witness Mr. Uhrs are "relevant to any party's claim or defense."[8] They assert that they need the medical and mental health records of Mr. Uhrs for their preparation and cross-examination of him about his mental condition now and in March 2008, when he allegedly witnessed the incident giving rise to this case. The records are relevant to his ability to have observed, understood and accurately remembered events in March 2008.

Plaintiffs do not dispute the relevance of the records. Indeed they may be relevant to the credibility of Mr. Uhrs. Plaintiffs instead argue that the Sedgwick Defendants have failed to cite a statute, court rule, or case holding that a non-party witness must produce his or her private and privileged medical, psychological, or psychiatric records. They argue that the healthcare information about Mr. Uhrs is privileged and protected from disclosure.

The Sedgwick Defendants argue that Plaintiffs do not have standing to assert privileges on behalf of Mr. Uhrs and have not shown that federal common law recognizes a privilege for his medical, mental health, and psychiatric records. The Sedgwick Defendants are correct that Plaintiffs have not asserted any personal right, interest, or privilege in the subpoenaed records of the witness they may call to testify on their behalf.[9] Thus, Plaintiffs do not have standing to move to quash or modify the subpoenas. But the motion before the Court is not to quash the subpoena, but rather to

---

[8]Fed. R. Civ. P. 26(b)(1).

[9]*See Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995) ("A motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.").

5

obtain an order to authorize the subpoenaed healthcare provider to disclose protected health information of a non-party witness. The Sedgwick Defendants contend that Plaintiffs cannot assert a privilege on behalf of Mr. Uhrs in response to their motion. The Court agrees with the Sedgwick Defendants on that point. As privilege is a right belonging exclusively to Mr. Uhrs, Plaintiffs cannot assert it on his behalf. Mr. Uhrs or his representative must assert the privilege.[10] In this case, although the subpoenaed entities had opportunity to object, it is not clear whether non-party witness Mr. Uhrs had notice of the subpoena and, consequently, an opportunity to object to the production of his medical and mental health records.

Due to the uncertainty as to whether Mr. Uhrs received notice of the subpoena of his medical and mental health records, and thereby have opportunity to assert a privilege, the Court will determine whether he has any potential privilege that would preclude disclosure of his healthcare records. In federal question cases, such as this one, the court must look to the federal common law regarding the existence of privileges.[11] While federal common law does not recognize a physician-patient privilege, federal common law does recognize a psychotherapist-patient privilege.[12] In *Jaffee*, the Supreme Court held that confidential communications between a licensed psychotherapist and his or her patients in the course of diagnosis or treatment are protected from compelled disclosure under Fed. R. Evid. 501.[13] Based upon the information before the Court, it appears

---

[10] *See Ali v. Douglas Cable Commc'ns, Ltd. P'ship*, 890 F. Supp. 993, 995 (D. Kan. 1995) (patient only person entitled to assert psychotherapist-patient privilege).

[11] Fed. R. Evid. 501.

[12] *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

[13] *Id.*

6

possible that Mr. Uhrs could assert, under federal common law, a psychotherapist-patient privilege for his mental health and psychiatric records.

In order for Mr. Uhrs to assert such a privilege, he should have notice that his mental health and psychiatric records had been subpoenaed. Federal regulation 45 C.F.R. § 164.512(e)(1)(ii), which allows a healthcare provider to disclose protected healthcare information pursuant to a subpoena, requires that the party seeking the protected health information provide notice to the individual whose healthcare information is subpoenaed. This differs from seeking a court order under subsection (i), which allows a healthcare provider to disclose protected healthcare information in response to such an order and does not require notice on the individual whose healthcare information is sought.[14] Proceeding under subsection (i) for a court order to authorize disclosure, the Sedgwick Defendants would not be subject to the notice requirements of subsection (ii). The Court holds that the notice requirement for a subpoena for non-party protected healthcare information should also apply when a party is proceeding under subsection (i) for an order to authorize a non-party's protected healthcare information. This ensures that the individual with the greatest interest in the requested healthcare information has opportunity to object and assert any privilege that might affect its production.

The Court therefore declines to entertain the present motion for a HIPAA-based order to authorize disclosure of healthcare information of a non-party witnesses, without a showing that adequate notice has been provided to the individual whose information is sought and that he or she has adequate opportunity to assert any privilege. Reviewing the record, the Court finds no evidence that Mr. Uhrs was served with a copy of the subpoenas served on his healthcare providers. The

---

[14] 45 C.F.R. § 164.512(e)(1)(i).

certificate of service of the present motion shows that it was mailed to Mr. Uhrs. The reply memorandum was mailed to both Mr. Uhrs and his criminal appellate attorney. The Sedgwick Defendants argue in their reply that Mr. Uhrs received notice of their motion and has not responded. They contend that mailing a copy of the motion substantially complied with 45 C.F.R. § 164.152(e)(1)(ii)(A). The Court disagrees that mailing a copy of the motion, which requests that the Court "enter the protective order which is attached as Exhibit A," to Mr. Uhrs constitutes substantial compliance with the notice requirements of 45 C.F.R. § 164.152(e)(1)(ii)(A). That regulation requires "satisfactory assurances" that reasonable efforts have been made to give notice of the request to the individual whose protected healthcare information has been sought. Under 45 C.F.R. § 164.152(e)(1)(iii)(B), the notice must include "sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court." The Court finds that an order upon the present motion to authorize a healthcare provider to disclose HIPAA-protected information would not adequately address the right of the non-party witness to raise an objection. In addition, the Sedgwick Defendants contend that one of the reasons they seek Mr. Uhrs's records is because they will show that he was and is incompetent. If that is the case, then merely mailing a copy of a motion for a "protective order" to an incompetent non-party witness does not constitute sufficient notice. Finally, had the Sedgwick Defendants served Mr. Uhrs with a copy of the subpoena, he could have communicated that he was claiming a privilege in his healthcare records to the subpoenaed healthcare provider. Fed. R. Civ. P. 45(d)(2) provides a mechanism for withholding subpoenaed information under a claim that it is privileged. He may not have availed himself of that mechanism without notice of a subpoena. For

8

these reasons, the Court finds that the Sedgwick Defendants have not provided Mr. Uhrs with sufficient notice of their subpoenas for his healthcare information.

The Court will therefore deny the Sedgwick Defendants' Motion for Discovery Order without prejudice to further motion showing a good faith effort to provide written notice to Mr. Uhrs and his attorney of the service of the subpoenas, and thus a more compelling mechanism for the witness to assert a privilege as to his healthcare records, if he chooses to do so.

**IT IS THEREFORE ORDERED THAT** the Sedgwick Defendants' Motion and Memorandum for Discovery Order (ECF No. 187) is denied without prejudice, as set forth herein.

Dated in Kansas City, Kansas on this 24th day of August, 2011.

S/ Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge