IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TERA M. BRUNER-McMAHON, as Administrator of the Estate of TERRY ALBERT BRUNER, Deceased, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Case No. 10-CV-1064-KHV |
| SEDGWICK COUNTY BOARD OF COMMISSIONERS, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

The Court has two motions under consideration: (1) Sedgwick County Defendants' Motion to Strike Expert Witness (ECF No. 242) and (2) Joinder in Co-Defendants' Motion to Strike Plaintiff's Expert Ken Katsaris (ECF No. 250) filed by the Conmed Defendants.[1] For various reasons, including adopted arguments set out by Stanton County Defendants in their formerly pending motion (ECF No. 240), the Sedgwick County Defendants seek an order to strike the report of Plaintiffs' retained expert witness and to exclude all testimony he may otherwise offer in this case. The Conmed Defendants join in that motion and incorporate by reference the arguments of both the Sedgwick and Stanton County Defendants.[2] Plaintiffs oppose the motions. For the reasons set out below, the Court grants the motions in part and denies them in part.

---

[1]The motions identify several individuals and entities as the Sedgwick County and Conmed Defendants. The Court will use the general names to refer collectively to the respective groups of defendants, because more particular identification is unnecessary to resolve the pending motions. It will likewise use "Defendants" to collectively refer to both remaining groups of defendants.

[2]The Court deemed the motion of the Stanton County Defendants (ECF No. 240) moot after those defendants were dismissed from the case. The Court will consider the arguments in their motion and supporting memorandum (ECF No. 241) as asserted by the other defendants.

**I.    BACKGROUND**

This action is brought under 42 U.S.C. § 1983 by the Administrator of the Estate of Terry Albert Bruner (Decedent or Bruner), and Bruner's heirs for alleged deprivations of his constitutional right to adequate medical care while detained or incarcerated.[3]

In January 2011, Plaintiffs made a disclosure of expert witness, following Fed. R. Civ. P. 26(a)(2), and including a written report (in the form of a Preliminary Affidavit), prepared and signed by W. Ken Katsaris.[4]  In his twelve-page affidavit, Katsaris sets out his qualifications as a corrections expert, the materials he reviewed, and his expert opinions from the information then before him.[5] As part of his report, he states that he "remain[s] open to further discovery for a deeper analysis of [an] apparent problem" concerning recognizing and ignoring serious medical conditions.[6]  He also requested discovery of Sedgwick County policies and/or procedures "and training for working with and identifying inmates with obvious medical conditions."[7]  He states that he will render a later opinion on "issues of custom and practice, policy deficiency or absence, and potential deliberate indifference to training needs" and that he will supplement his opinions "when depositions and other discovery is provided."[8]  In a different paragraph of his report, he indicates that he "reserve[s] the right to supplement and amend [his] opinions based upon additional information provided to [him]," and if

---

[3]Pretrial Order (ECF No. 294) at 2, 31.

[4]The Sedgwick County Defendants attach the expert report as Exhibit 1 to their supporting memorandum.  *See* ECF No. 243-1.

[5]*See generally*, Prelim. Aff. Katsaris (Aff.).

[6]*See id.* ¶ D.4.

[7]*See id.* ¶ D.5.

[8]*Id.*

2

further discovery impacts his opinions, he will immediately reveal revised/new opinions to Plaintiffs.[9] Although the Court extended their deadline,[10] Plaintiffs have made no additional expert disclosure.

In the motions here before the Court, Defendants move to strike the expert report of Katsaris and to exclude his testimony on grounds the report is insufficient under Fed. R. Civ. P. 26(a)(2)(B) and the opinions stated therein inadmissible. Plaintiffs oppose the motions.[11] The Sedgwick County Defendants have filed a reply brief.[12]

## II.   SUFFICIENCY OF EXPERT REPORT

Defendants contend that the expert report of Katsaris is deficient in that it is incomplete and does not include a complete statement of all of his opinions. They point to statements in the report which indicate that additional discovery could impact his opinions.

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs "Disclosure of Expert Testimony." Rule 26(a)(2)(B) requires that a party's expert disclosure "be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony." Such report must contain certain information, including "a complete statement of all opinions the witness will express and the basis and reasons for them."[13] The disclosure is "intended to serve as a com-

---

[9] *See id.* ¶ E.

[10] *See* Am. Scheduling Order (ECF No. 166 (extending Plaintiffs' expert disclosure deadline to May 29, 2011)).

[11] *See* Mem. Opp'n (ECF No. 253); Resp. Opp'n (ECF No. 255).

[12] *See* Reply (ECF No. 256).

[13] Fed. R. Civ. P. 26(a)(2)(B)(i).

3

plete and reliable preview of the expert's trial testimony."[14]  Incomplete or preliminary reports do not comply with Rule 26(a)(2).[15]  When "a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[16]

At trial Plaintiffs propose to present opinions from Katsaris "as to whether Defendants violated policies and adhered to the generally recognized corrections standards of care."[17]  Plaintiffs contend that Katsaris has "opined that personnel of the Sedgwick County Sheriff's Department and the Stanton County Jail failed to follow the accepted and well-recognized practices when faced with a recognized medical need."[18]  Although the expert report is titled "Preliminary Affidavit," they further argue that, in accordance with Rule 26(a)(2), they have "provided a complete statement of all opinions to be expressed and the reasons therefore."[19]  They argue that the expert report sets out

---

[14]*Anderson v. Hale*, No. 02-0113-F, 2002 WL 32026151, at *2 (W.D. Okla. Nov. 04, 2002).

[15]*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002); *Kern River Gas Transmission Co. v. 6.17 Acres of Land*, 156 F. App'x 96, 102 (10th Cir. 2005).

[16]Fed. R. Civ. P. 37(c)(1).  The rule also applies to preclude use of supplemental information required by Rule 26(e).  Under Rule 26(e), parties must supplement or correct expert reports when the disclosed "information 'is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Gillum v. United States*, 309 F. App'x 267, 269 (10th Cir. 2009).  Unless ordered by the Court, a Rule 26(e) supplementation may only be based upon additional or corrective information that was unavailable when the expert made his or her initial report.  *See Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006).  Because Plaintiffs have not supplemented their expert report, Rule 26(e) supplementation is not at issue in the context of the motions before the Court.

[17]Mem. Opp'n at 3.  The memorandum numbers the first page as page three and proceeds to number the remaining pages as four, five, etc.  The Court cites to the provided page numbers.

[18]*Id.* at 11.

[19]*Id.* at 3.

the substance of the opinions and is not a substitute for his trial testimony.[20]  They submit that they will timely supplement the expert disclosures, if necessary.[21]

Mr. Katsaris formed his opinions, based on his "experience, training and education in the corrections field" and a nationally recognized standard of care "as the custom and practice for the administration, management and supervision of corrections agencies and personnel."[22]  He states the following opinions in his report:

> (1) "Bruner died on March 12, 2008 as a result of the deliberate disregard of a demonstrated, known, and obvious need for medical care."[23]
>
> (2) Stanton County Jailer Carol Shepard did not follow "accepted and recognized practices when faced with a recognized emergency medical need," but instead "called Sedgwick County Sheriff's Corporal Tedd W. Gibson on March 5, 2008, at 0800 hours suggesting that Bruner be returned to Sedgwick County."[24]
>
> (3) While Bruner was at the Sedgwick County Detention Facility between March 6 and 10, 2008, "correctional staff . . . ignored his condition even as he was dying before their eyes."[25]
>
> (4) After-the-fact "comments in official reports show and demonstrate knowledge of a medical condition that the officers were deliberately ignoring" even though Bruner "had indications of internal bleeding and was not eating, drinking or acting normal.[26]

---

[20]*Id.* at 5.

[21]*Id.*

[22]Aff. at 6.

[23]*Id.* ¶ D.1.

[24]*Id.*

[25]*Id.* ¶ D.2.

[26]*Id.*

5

(5) Bruner's death was "most certainly linked to acute meningitis."[27]

(6) Bruner had a serious medical condition that "was known and ignored until it was simply to [sic] late to treat or reverse."[28]

(7) An affidavit of a Conmed employee that "she was 'discouraged' from providing medical services to inmates in order to keep costs down . . . brings up the serious need for an evaluation of the custom and practice of denying medical care which would without doubt be deliberate indifference as well to serious medical conditions."[29]

Although Plaintiffs attempt to broadly characterize the opinions of Mr. Katsaris as stating that jail personnel in both Sedgwick and Stanton Counties failed to follow accepted and well-recognized practices when faced with a recognized medical need, the report itself does not support such sweeping characterization. The seven listed opinions are the only ones set out by Katsaris in his report.

Notwithstanding their overly broad characterization of the opinions of Mr. Katsaris, Plaintiffs are not requesting the Court to permit their expert to testify about opinions not included in his report. To the contrary, they insist that they have provided a complete statement of their expert's opinions subject only to possible supplementation under Rule 26(e). Accordingly, the Court may proceed as though Plaintiffs do "not intend to offer testimony outside the four corners of the report."[30] The requirement of a complete statement of all opinions is thus satisfied.[31] As that is the only claimed Rule 26(a)(2) deficiency, the Court considers the report sufficient for purposes of this memorandum

---

[27] *Id.* ¶ D.3.

[28] *Id.* ¶ D.4.

[29] *Id.*

[30] *See Anderson*, 2002 WL 32026151, at *3 & n.1.

[31] *See id.*

and order.  Without a failure to provide information required by Rule 26(a), there is no need to consider whether any opinion should be excluded under Fed. R. Civ. P. 37(c)(1).  The Court denies the motions to strike to the extent they seek to strike the expert report as deficient under Rule 26(a)(2)(B).  Absent further order of the Court, however, Katsaris may not express an opinion not stated in his report.[32]  The Court, therefore, proceeds to the admissibility of the proffered opinions.

### III.	ADMISSIBILITY OF EXPERT OPINIONS

Defendants argue that the opinions of Katsaris lack reliability and merely state legal conclusions not helpful to the jury.  Applying Fed. R. Evid. 702[33] and *Daubert v. Merrell Dow Pharma-*

---

[32]*See id.* at *3.  Naturally, if the report does not include all opinions intended to be expressed by Katsaris at trial, that requirement can be considered and enforced at trial.  *See id.*

[33]Effective December 1, 2011, Rule 702 provides:
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule formerly read:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or

*ceuticals, Inc.*,[34] the Court acts as a gatekeeper for admissibility of expert testimony.[35]  Two other Supreme Court cases, *Kumho Tire Co. v. Carmichael*[36] and *General Electric Co. v. Joiner*,[37] further clarify the gatekeeper role.[38]  *Joiner* makes clear that a "decision to admit or exclude expert testimony" is within the trial court's sound discretion.[39]  *Kumho* clarifies that decisions about how to determine whether to admit or exclude expert testimony is likewise within the broad discretion of the trial courts.[40]

To determine admissibility under Rule 702, the Court must first determine "whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion" as required by Rule 702.[41]  The proponent of the expert has the burden to demonstrate that he or she is qualified within the meaning of rule 702.[42]

---

> data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The 2011 amendments "are intended to be stylistic only" without "intent to change any result in any ruling on evidence admissibility."  Fed. R. Evid. 702 advisory committee notes (2011 amend.).

[34]509 U.S. 579 (1993).

[35]*United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011).

[36]526 U.S. 137, 141 (1999).

[37]522 U.S. 136, 142 (1997).

[38]*United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006).

[39]522 U.S. at 138-39.

[40]526 U.S. at 152-53.

[41]*103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 990 (10th Cir. 2006).

[42]*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001).

Once the Court is satisfied that the expert is sufficiently qualified, it must determine whether the expert's opinion is reliable.[43] *Daubert*'s general principles apply to all matters described in Rule 702 – scientific, technical, or other specialized knowledge.[44] In general, there must be "a reliable basis in the knowledge and experience of [the relevant] discipline."[45] While *Daubert* listed four factors that might bear on the issue of reliability in a given case, it declined to establish a "definitive checklist or test."[46] As recognized in *Kumho*, the courts have wide latitude to consider a variety of factors to determine the reliability of the expert's opinions in a particular case.[47] In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience."[48]

Upon finding an opinion reliable, the Court must consider "other non-exclusive factors to determine whether the testimony will assist the trier of fact," including (1) relevancy of the testimony; (2) whether the testimony "is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility."[49] Whether testimony will assist the trier of fact "goes primarily to relevance."[50] Rule 702 establishes a "helpfulness standard,"

---

[43] *103 Investors I, L.P.*, 470 F.3d at 990.

[44] *Kumho Tire Co.*, 526 U.S. at 149.

[45] *Id.*

[46] *See id.* at 150 (quoting *Daubert*, 509 U.S. at 593).

[47] *See id.* at 150-52.

[48] *Id.* at 150.

[49] *Rodriguez-Felix*, 450 F.3d at 1122-23 (citations omitted).

[50] *Daubert*, 509 U.S. at 591.

and irrelevant expert testimony is not helpful.[51]  "Relevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[52]  Whether testimony is helpful to the trier of fact essentially depends on whether the underlying reasoning and methodology can be properly applied to the facts of the case.[53]

### A.  Qualifications

A "corrections expert" may provide appropriate expert testimony in a given case.[54]  No one argues that Mr. Katsaris is not qualified to render an opinion as a corrections expert.  Accordingly, for purposes of this memorandum and order, the Court will assume he is qualified to testify as such an expert.

### B.  Reliability

Defendants do not contest the qualifications of Mr. Katsaris to testify as a corrections expert. They instead argue that he is not qualified to give expert medical testimony.  This argument goes to the reliability of his testimony.  An expert's opinion is unreliable when the expert lacks knowledge and experience in the relevant discipline.[55]  Nothing in the qualifications of Katsaris provides a suitable basis for rendering a reliable opinion on medical or other matters outside his field of expertise.  Accordingly, the Court finds no reliability in his opinions that (1) Bruner's death resulted

---

[51] *Id.* at 591-92.

[52] *Garcia*, 635 F.3d at 476 (citations and internal quotation marks and modifications omitted).

[53] *Rodriguez-Felix*, 450 F.3d at 1123 (*citing* Daubert, 509 U.S. at 593).

[54] *See Murphy v. Gilman*, Nos. 1:03-CV-145, 4:04-CV-103, 2006 WL 3613754, at *2 n.2 (W.D. Mich. Dec. 11, 2006) (allowing some but not all testimony from a corrections expert).

[55] *Kumho Tire Co.*, 526 U.S. at 149.

from a deliberate disregard of a need for medical care; (2) staff ignored his medical condition "even as he was dying before their eyes;" (3) officers deliberately ignored his medical condition even though he "had indications of internal bleeding;" (4) his death was linked to meningitis; (5) he had a serious medical condition that was ignored until it was too late to treat or reverse; and (6) denying medical care in this case constitutes deliberate indifference to a serious medical condition. Mr. Katsaris may not testify as to medical and other matters outside his field of expertise.[56]

To the extent that Katsaris may have sufficient knowledge and experience as a corrections officer to render an expert opinion regarding the affidavit of the Conmed employee, furthermore, his own affidavit indicates he needs to evaluate the custom and practice of denying medical care and to review the practices of various participants to determine their culpability.[57] In other words, Katsaris lacks sufficient facts or data to render a reliable opinion that a custom and practice of denying medical care existed, from which deliberate indifference to a serious medical condition might be inferred. The opinion is thus inadmissible under Fed. R. Evid. 702.[58]

The Court finds only one reliable opinion proffered by Katsaris that could fall within his expertise as a corrections expert – that a Stanton County Jailer did not follow "accepted and recognized practices when faced with a recognized emergency medical need."

### C. Helpfulness

Although the opinion regarding whether the Stanton County Jailer followed accepted and recognized practices may be reliable, the dismissal of the Stanton County Defendants from this

---

[56] *See Swinney v. State Farm Fire & Cas. Co.*, No. 10-2021-CM, 2010 WL 5437191, at *3 (D. Kan. Dec. 21, 2010) (excluding testimony "regarding issues outside his area of expertise").

[57] *See* Aff. at 12.

[58] *Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79-80 (10th Cir. 2011).

action may have rendered the opinion irrelevant. The Court need not address that question, however, at this point. Determining the relevancy of the opinion should be reserved for the trial judge. At this point the Court merely finds that the opinion as to whether Jailer Shepard followed proper procedures and protocol could be helpful to the trier of fact. Consequently, the motions to strike are overruled as to that opinion.

Even though the Court finds the other reported opinions of Mr. Katsaris unreliable, they should also be excluded as unhelpful to the jury. He opines that staff ignored Mr. Bruner's medical condition or deliberately acted or failed to act. But the jury itself is capable of examining the evidence and listening to witnesses to determine if staff ignored Bruner's medical condition. Whether a person has ignored something is within the common knowledge and experience of the jury. Testimony from Katsaris that staff were ignoring Bruner's medical condition would usurp the jury's role to determine the credibility of the witnesses. Such expert testimony is not admissible under Rule 702, as interpreted by *Daubert* and *Kumho*.

Whether someone has deliberately acted or failed to act likewise addresses the common knowledge and experience of the jury. In this instance, moreover, the deliberateness of action or inaction by Defendants is inextricably intertwined with the legal standard – deliberate indifference – required for Plaintiffs to succeed on their § 1983 claims of denial of medical care.[59] In the context of this case opinions regarding deliberateness are not admissible expert opinions. The Court agrees with the defense contention that permitting Mr. Katsaris to testify to his reported opinions would indeed be tantamount to making him an additional member of they jury. Allowing his opinions as

---

[59]*See* Pretrial Order at 31-32; *accord Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

supposedly expert testimony would add unjustified weight to the Plaintiff's evidence and create for the jury confusion, not helpfulness.

Witnesses may not "give an opinion on a question of law."[60] This is so, because the court alone is the "arbiter of the law and its applicability."[61] To hold otherwise would permit multiple statements of the law to "intolerably confound the jury."[62] Thus, while Fed. R. Evid. 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue,"[63] the embraced issues are limited to factual rather than legal issues.[64] The advisory notes to Rule 704 address the concern resulting from witnesses making a legal conclusion in the form of an expert opinion:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.[65]

---

[60]*Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (citation omitted).

[61]*Id.*

[62]*Id.*

[63]This wording became effective December 1, 2011. The rule formerly provided that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The 2011 amendments "are intended to be stylistic only" without "intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 704 advisory committee notes (2011 amend.).

[64]*See United States v. Wood*, 207 F.3d 1222, 1236 & n.10 (10th Cir. 2000); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

[65]Fed. R. Evid. 704 advisory committee notes.

The courts properly exclude testimony that offers no more than a legal conclusion which instructs the jury as to what result to reach.[66] They also properly find testimony on an ultimate issue non-helpful when the witness uses terms that "have a separate, distinct and specialized meaning in the law different from that present in the vernacular."[67] Accordingly, experts may not testify that someone was "deliberately indifferent", because that is a legal conclusion reserved for the trier of fact based upon the facts provided at trial and the law provided by the court.[68]

In this case Mr. Katsaris does not define "deliberate indifference" in his opinions. But he specifically uses the legal phrase in his expert report. He may not testify as to that legal conclusion.[69] Likewise, although Katsaris does not specify what he means by his opinion that someone acted with "deliberate disregard" or was "deliberately ignoring" Bruner's medical condition, his use of these phrases in the context of this case impermissibly encroaches upon the domain of the jury to determine if Defendants were deliberately indifferent under the facts presented at trial. The Court, not an expert witness, provides legal definitions for the trier of fact. In a case that alleges deliberate indifference, expert testimony that someone deliberately did something or deliberately failed to do

---

[66] *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997); *Sellers v. Butler*, No. 02-3055-DJW, 2006 WL 2714274, at *5-6 (D. Kan. Sept. 22, 2006).

[67] *Woods*, 110 F.3d at 1220 (emphasis and citation omitted).

[68] *See id.* at 1219-21 (cited with approval in *Wood*, 207 F.3d at 1236 n.10); *Berry*, 25 F.3d at 1353-54; *Sellers*, 2006 WL 2714274, at *5-6.

[69] Other courts have also excluded testimony from Katsaris for making legal conclusions in his expert opinions. *See*, *e.g.*, *Soles v. Ingham Cty.*, 316 F. Supp. 2d 536, 542 (W.D. Mich. 2004) (deliberate indifference); *White v. Gerardot*, No. 1:05-CV-382, 2008 WL 4372019, at *6-7 (N.D. Ind. Sept. 23, 2008) (unreasonable or unnecessary force); *Norman v. City of Lorain*, No. 1:04 CV 913, 2006 WL 5249725, at * 2-3 (N.D. Ohio Nov. 27, 2006) (same). *See also Lewis v. Adams Cty.*, 244 F. App'x 1, 12 (6th Cir. 2007) (noting that district court properly ignored an expert opinion by Katsaris that "merely express[ed] a legal conclusion" regarding the objective unreasonableness and excessiveness of applied force).

something creates a likely risk of confusing the jury. For these reasons, the opinions regarding deliberateness are not helpful. Accordingly, the Court should exclude them, even if they possess some reliability from the experience, training, and education of the expert.

A helpful opinion from a corrections expert such as Katsaris would avoid legal labels that describe mental attitude and intellectual understanding. A helpful expert opinion would not state that someone was "indifferent", "deliberately indifferent", "deliberately ignoring", or "disregarding" a medical condition. It would instead provide relevant testimony about standards and accepted practices for jail employees to follow, when confronted by a recognized medical need. A helpful opinion would show what specific acts should be taken or avoided by jail personnel in a given circumstance. But testimony as to what conduct would comply with accepted standards in a specific situation is significantly different from describing the mental state of the actor. In this case the expert report of Mr. Katsaris fails to identify any potentially helpful opinions, except for the one that addresses the conduct of Stanton County Jailer Shepard.

For the foregoing reasons, the Court finds each of the opinions set out by W. Ken Katsaris in his expert report are inadmissible, except for the one related to Jailer Shepard. The Court thus grants in part the Sedgwick County Defendants' Motion to Strike Expert Witness (ECF No. 242) and the Joinder in Co-Defendants' Motion to Strike Plaintiff's Expert Ken Katsaris (ECF No. 250) filed by the Conmed Defendants. The inadmissible expert opinions are hereby stricken from the report. Testimony from W. Ken Katsaris regarding those opinions should be excluded. Although Plaintiffs submit they will supplement their expert disclosures, if necessary, they have not supplemented them in the five months since filing their opposition to the motions to strike. Because the Court finds all but one of the disclosed opinions of Katsaris inadmissible, his report contains only the one opinion

subject to supplementation under Fed. R. Civ. P. 26(e)(2).

Dated in Kansas City, Kansas on this 6th day of January, 2012.

s/Gerald L. Rushfelt  
Gerald L. Rushfelt  
United States Magistrate Judge